## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGE CANNING,     :
           :
     **Plaintiff,**   :
           :
     **v.**      :   **Civil Action No. 04-1464 (GK)**
           :
U.S. DEPARTMENT OF DEFENSE, :
           :
     **Defendant.**  :

## MEMORANDUM OPINION

Plaintiff, George Canning, brings this action *pro se* against the United States Department of Defense ("DoD"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks (1) all information concerning the training of Virginia State Police ("VSP") at Fort Picket, Virginia in September 1986 and (2) quarterly reports filed by the Secretary of the Army with DoD concerning military assistance to civilian law enforcement in 1986. This matter is now before the Court on Defendant's Motion for Summary Judgment. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion is **granted**.

## I. BACKGROUND

### A. Statement of Genuine Issues

Local Rule 7.1(h) requires both parties to identify with particularity those material facts necessary to support their motions for or in opposition to summary judgment. Specifically, Rule 7.1(h) provides:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to

such a motion shall be accompanied by a <u>separate concise statement of genuine issues</u> setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. . . .  In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless a fact is controverted in the statement of genuine issues filed in opposition to the motion.

Local Rule 7.1(h) (emphasis added).

This Circuit has held that "[i]f the party opposing the motion fails to comply with this local rule, then the district court is under no obligation to sift through the record and should [i]nstead . . . deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule [7.1(h)] statement." <u>Securities and Exh. Comm'n v. Banner Fund Int'l</u>, 211 F.3d 602, 616 (D.C. Cir. 2000) (internal citations omitted).  <u>See</u> <u>Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner</u>, 101 F.3d 145, 151 (D.C. Cir. 1996) (concluding that Local 7.1(h) "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record.").  This Circuit demands strict compliance with this Rule.  <u>See</u> <u>id.</u>

Plaintiff has failed to comply with both Local Rule 7.1(h) and Fed. R. Civ. P. 56(e).[1]  While Plaintiff's "Statement of Material Facts in Dispute" may be "separate," it fails to satisfy the purposes of a Rule 7.1(h) statement because it "blend[s] factual assertions with legal argument[.]"  Colbert v. Chao, 2001 WL 710114, *8 (D.D.C.) (citing Jackson, 101 F.3d at 153).  Accordingly, the material facts submitted by Defendant will be deemed admitted because they have not been adequately controverted.

### B.    Plaintiff's FOIA Requests

### 1.    1998 FOIA Request to the Department of the Army

By letter dated August 17, 1998, Plaintiff submitted a FOIA request to the Department of the Army FOIA Office seeking "all information concerning the training of Virginia State Police personnel at Fort Pickett, Virginia in late September 1986 in preparation for a joint federal-state search-and-seizure raid in Leesburg, Virginia in October 1986, on offices of publishers associated with Lyndon H. LaRouche, Jr."  (Plaintiff's "1998 Request") Am. Compl. ¶ 12.  By letter dated November 4, 1998, the Army FOIA Office informed Plaintiff that it was referring his request to the Office of the Deputy Chief of Staff for Operations and Plans ("DCSOPS") FOIA Office at the Pentagon.  See Def.'s Statement of Material Facts, ¶ 2.

---

[1]    Fed. R. Civ. P. 56(e) provides, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The DCSOPS FOIA Office assigned the search for responsive documents to the two offices where such documents would most likely be located: (1) the Security, Force Protection and Law Enforcement Division ("DAMA-ODL");[2] and (2) the Director of Military Support/Military Support Division (DAMO-ODS").[3]  See id. ¶ 3.

On December 1, 1998, DAMO-ODL conducted a "visual, physical and electronic check of current records held and Standard Forms 135 indicating those records transferred to the Federal Record Center, but still in custody of the agency."  Id. ¶ 5.  This search revealed no records responsive to Plaintiff's request, and DAMO-ODL provided the DCSOPS FOIA Office with a no records response.  See id.

In January 1999, DAMO-ODS conducted a "visual, physical and electronic title and key word search of [its] current and retired records" and coordinated its search with elements of other Army agencies including the U.S. Army National Guard Bureau, U.S. Army Forces Command, the Military District of Washington and the U.S. Army Training and Doctrine Command.  See id. ¶ 7.  This search revealed no records responsive to Plaintiff's request.  See id.

By letter dated January 13, 1999, the DCSOPS FOIA Office informed Plaintiff that the requested information did not fall under its "functional area of responsibility" and suggested that he request the information from the Army Center for Military History ("CMH").  See id. ¶ 9.

---

[2]     According to Defendant, DAMO-ODL is the functional component for military law enforcement and criminal investigation operations.  See Def.'s Statement of Material Facts, ¶ 4.

[3]     According to Defendant, DAMO-ODS is responsible for managing the provision of military support functions to non-DoD agencies and civil authorities.  See Def.'s Statement of Material Facts, ¶ 4.

### 2.      1999 FOIA Report

#### a.      CMH

By letter dated January 19, 1999, Plaintiff submitted a FOIA request to CMH seeking the same information he requested in his 1998 Request to the Department of the Army (Plaintiff's "1999 CMH Request"). See Am. Compl. ¶ 22. In February 1999, the CMH FOIA Office searched for responsive documents among the "records and manuscript files, including computer indices and microfilm, currently maintained by the Department of the Army, U.S. Army Center of Military History, as well as transfer documents for historical files transferred to storage." Def.'s Statement of Material Facts, ¶ 16. The search also included a "key word search of Historical Reference Collection 2 and Historical Manuscript Collection 2 [which] did not result in any documents concerning the training of Virginia State Police personnel at Fort Pickett or any other Army post. A physical search of the Fort Picket post file and the files of records retired during or after 1986 did not find any documents related to the FOIA [request.]." Id. ¶ 17.

By letter dated March 5, 1999, CMH informed Plaintiff that it had located no responsive records, but suggested that because Fort Pickett had been a "sub-installation" of Fort Lee, Virginia, and Fort Bragg, North Carolina, Plaintiff might send FOIA requests to those locations. Id. ¶¶ 18, 20.

#### b.      Fort Lee, Virginia/U.S. Army Forces Command

By letter dated March 10, 1999, Plaintiff submitted a FOIA request to the Fort Lee, Virginia FOIA Office, seeking the same information that he requested in his 1998 Request to the Department of the Army, Fort Lee, Virginia (Plaintiff's "1999 Fort Lee, Virginia Request"). See id. ¶¶ 23, 24.

By letter dated April 14, 1999, the Fort Lee, Virginia FOIA Office informed Plaintiff that all records pertaining to Fort Pickett had been transferred to U.S. Army Forces Command

("FORSCOM"), Fort McPherson, Georgia, and that his request had been transferred there.  See id. ¶ 25.  By letter dated January 30, 2001, the FORSCOM FOIA Office informed Plaintiff that his FOIA request had been "misdirected" and that it was forwarding his request to the Fort Pickett, Virginia FOIA Office for processing.  See id. ¶ 29.

In February 2001, FORSCOM forwarded Plaintiff's request to the Fort Pickett Office of the Adjutant General of Virginia (Historical Records Section).  See id.  On March 6, 2001, the Office of the Adjutant General of Virginia, Fort Pickett, Virginia, Administrative and Program Specialist for Historical Records, searched the records of both the Virginia Army National Guard and the Fort Pickett headquarters and determined that no responsive records were located at Fort Pickett.  See id. ¶ 30.

By letter dated March 7, 2001, the Fort Pickett Director of Information Management responded to the FORSCOM FOIA Office stating that, given the time frame of the requested records sought by Plaintiff, the Virginia Army National Guard was not in control of Fort Pickett at the time the training was conducted and did not have any other information concerning the matter.  The FORSCOM FOIA Office deemed this response "tantamount to a 'no records' determination."  Id. ¶ 31.

By letter dated March 14, 2001, the FORSCOM FOIA Office informed Plaintiff that no responsive records had been found.  See id. ¶ 32.

### 3.      Action on Plaintiff's 1998 and 1999 FOIA Requests by the Office of the Secretary of the Army Initial Denial Authority

In October 2004, pursuant to the instant action filed by Plaintiff in August 2004, the Initial Denial Authority ("IDA") determined, following a review of its historical FOIA files, that neither

the Office of the Secretary of the Army nor the National Archives and Records Administration

("NARA") was assigned by the Army FOIA Office to search for records responsive to Plaintiff's

1998 FOIA Request.  See id. ¶ 48.

On October 28, 2004, the Senior Administrative Aide for the Secretary of the Army searched

for records responsive to Plaintiff's 1998 FOIA Request by conducting a thorough "visual, physical,

and electronic check of records and files currently maintained by the Department of the Army, Office

of the Secretary, as well as historical files transferred to storage using search terms as presented

within the FOIA request.  The search included title and key word computer search on all classified

and unclassified records in the library."  Id. ¶ 50.  Further, the search involved the "electronic, paper

and archived files/database" using the following title key word search terms as presented within the

FOIA request: "Virginia State Police, Search and Seizure Training, Lyndon LaRouche and Ft.

Pickett."  Id.  Following this search, the Senior Administrative Aide determined that there were no

responsive documents located within the Office of the Secretary of the Army and provided the Office

of the Chief Attorney with a no records response.  See id.

On October 29, 2004, the Acting Chief of the NARA FOIA Office conducted a "search of

all relevant file series in the custody of the National Archives and Records Administration's Modern

Military Records" which "failed to produce any documentation pertaining to the subject of Mr.

Canning's [1998] request."  Id. ¶ 51 (internal quotation omitted).

By letter dated November 9, 2004, the Army Office of the Chief Attorney informed Plaintiff

that no documents responsive to either his 1998 or 1999 Requests had been located by the Office of

the Secretary of the Army.  See id. ¶52.

4.      **Action on Plaintiff's 1998 and 1999 FOIA Requests by the Department of the Army Office of General Counsel**

By letter dated June 9, 1999, Plaintiff appealed DCSOPS' no records finding in response to his 1998 Request, alleging an inadequate search. See id. ¶ 53.  By letter dated January 14, 2005, the Office of the General Counsel denied Plaintiff's appeal.[4]  See id. ¶ 56.

In concluding that "a thorough search of the records maintained by the IDA and other offices was conducted . . . and reasonably could be expected to produce any responsive records in the custody of these offices," the Army General Counsel noted that "no records" certifications were received from the following nine Army components: (1) the Office of the Deputy Chief of Staff for Operations and Plans, G3, dated November 15, 2004; (2) the U.S. Army Special Operations Command ("USASOC"), Army Compartmented Element, dated April 6, 1999; (3) the U.S. Army Special Forces Command (Airborne) ("USASFC(A)"), GS, Operations Division, dated June 15, 1999; (4) Fort Lee, Virginia, dated October 20-21, 2004; (5) the U.S. Army Forces Command, G-3/5/7, Training Division located at Fort McPherson, dated October 21, 2004; (6) the Office of the Secretary of the Army, dated October 28, 2004; (7) the U.S. Army Center of Military History, dated October 28, 2004; (8) the National Archives and Records Administration, dated October 29, 2004; and (9) the Office of the Adjutant General of Virginia, Fort Pickett, Virginia, dated January 13, 2005.[5]  Id. ¶ 57.

---

[4]      According to Defendant, FOIA appeals to the Department of the Army Office of General Counsel are generally processed in the order in which they are received.  In the case of Plaintiff's June 9, 1999 appeal, however, "the General Counsel's Office filed the appeal incorrectly, resulting in an extended delay between Plaintiff's original appeal and the General Counsel's final response."  Def.'s Statement of Material Facts, ¶ 55.

[5]      Defendant also notes that "eleven national searches and/or no records determinations (continued...)

###### 5.    2004 FOIA Request to the Department of Defense

By letter dated August 24, 2004, Plaintiff submitted a FOIA request to the DoD Freedom of

Information and Security Review ("DoD FOIA Office") ("Plaintiff's 2004 Request") seeking

quarterly reports and other writings submitted pursuant to Section 6 of DoD Directive 5525.5 ("DoD

Cooperation with Civilian Law Enforcement Officials")[6] and filed by the Secretary of the Army with

DoD concerning military assistance to civilian law enforcement in 1986.  See Am. Compl. ¶ 37.

On September 15, 2004, the DoD FOIA Office forwarded Plaintiff's request to the Office of

Assistant Secretary of Defense for Special Operations/Low Intensity Conflict ("SOLIC"), because

SOLIC was the Office of the Secretary of Defense ("OSD") staff office with the subject matter

expertise over the requested documents.  See Def.'s Statement of Material Facts, ¶ 62.  In late

September 2004, SOLIC provided the DoD FOIA Office with a no records response and indicated

---

[5](...continued)
were made by the Army within the context of formulating a response to Plaintiff's 1998 and 1999
FOIA requests and include: (1) The Office of the Chief Attorney, dated November 9, 2004; (2) The
Office of the Deputy Chief of Staff for Operations and Plans, dated December 1, 1998, January 5,
1999, January 13, 1999, April 13, 1999, and August 9, 1999; (3) Fort Lee, Virginia, dated March 22,
1999 and April 14, 1999; (4) The Army Center of Military History, dated March 5, 1999; (5) The
Office of the Adjutant General of Virginia, Fort Pickett, Virginia, dated March 7, 2001; (6) The U.S.
Army Forces Command, Fort McPherson, Georgia, dated March 14, 2001."  Def.'s Statement of
Material Facts , ¶ 58.

[6]    Section 6 of DoD Directive 5525.5 states, in pertinent part:

   A quarterly report of all requests for assistance (approved, denied, or
   pending) shall be submitted by the Secretaries of the Military
   Departments . . . to the [Assistant Secretary of Defense] ([Force
   Management & Policy]), the General Counsel, the [Assistant
   Secretary of Defense] ([Health Affairs]), and the [Assistant Secretary
   of Defense] ([Reserve Affairs]) not later than 30 days after the end of
   each quarter.

Def.'s Statement of Material Facts, ¶ 61.

that the Department of the Army might have responsive documents because SOLIC was formed by the Fiscal Year 1987 Authorization Act and was not in existence in 1986.  See id. ¶ 63.  By letter dated November 22, 2004, the DoD FOIA Office informed Plaintiff that SOLIC had located no responsive documents, but that Plaintiff's request had been referred to the Department of Army's FOIA Office.  See id. ¶¶ 64, 65.

By letter dated November 29, 2004, Plaintiff appealed the DoD FOIA Office's November 22, 2004 determination, alleging an inadequate search.  See id. ¶ 66.

Following receipt of Plaintiff's November 29, 2004 appeal, the DoD FOIA Office reopened Plaintiff's August 24, 2004 FOIA request and forwarded it to the four OSD staff offices mentioned in DoD Directive 5525.5, Section 6: (1) the DoD Office of General Counsel; (2) the Office of the Assistant Secretary of Defense -- Health Affairs; (3) the Office of the Assistant Secretary of Defense -- Reserve Affairs; and (4) the Office of the Assistant Secretary of Defense for SOLIC.  See id. ¶ 68.

On January 12, 2005, the DoD FOIA Office informed Plaintiff that "to ensure that this office properly processed your request, we reopened your August 24 request and tasked it to the Office of General Counsel, the Office of the Assistant Secretary of Defense (Health Affairs) and the Office of the Assistant Secretary of Defense (Reserve Affairs).  None of those offices found a record of the reports you requested. . . . [SOLIC] again searched its files.  They still advised that no responsive records were located.  Please note that the Office of the Assistant Secretary of Defense (Force Management & Policy) no longer exists and has been reorganized under SOLIC."  Id. ¶ 71.  In its letter dated January 12, 2005, the DoD FOIA Office located and released three regulations responsive to Plaintiff's request: DoD Directive 3025.12, dated June 8, 1968; DoD Directive 5525.5, dated January 15, 1986; and DoD Instruction 7730.53, dated December 23, 1982.  See id. ¶ 72.

C.     **The Instant Litigation**

On August 27, 2004, after exhausting his administrative remedies, Plaintiff filed the instant

action seeking (1) all information concerning the training of Virginia State Police ("VSP") at Fort

Pickett, Virginia in late September 1986 and (2) quarterly reports filed by the Secretary of the Army

with DoD concerning military assistance to civilian law enforcement in 1986.  On March 3, 2005,

Plaintiff filed an Amended Complaint which contained essentially the same allegations as the

Original Complaint.   On March 21, 2005, Defendant filed the instant Motion for Summary

Judgment.[7]

## II.     STANDARD OF REVIEW

FOIA "requires agencies to comply with requests to make their records available to the

public, unless the requested records fall within one or more of nine categories of exempt materials."

Oglesby v. Dep't of the Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. §§ 552(a), (b)).

An agency that withholds information pursuant to a FOIA exemption bears the burden of justifying

its decision, Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992)

---

[7]         Defendant's Motion for Summary Judgment includes the declaration of (1) Loretta Phillips, Freedom of Information Officer, Office of the Deputy Chief of Staff, G-3/5/7, Department of the Army ("Phillips Decl."); (2) Frank Shirer, Archivist, U.S. Army Center of Military History, Fort McNair, Department of the Army ("Shirer Decl."); (3) Donald Ray Bass, Chief, Administrative Services Division, U.S. Army Garrison, Directorate of Information Management, Fort McPherson ("Bass Decl."); (4) Wyomia G. Covert, Administrative & Program Specialist, Joint Force Headquarters, Virginia Army National Guard, Department of Information Management, Historical Records Section ("Covert Decl."); (5) Suzanne Council, Chief Attorney and Legal Services Directorate, Office of the Administrative Assistant to the Secretary, U.S. Army Resources and Program Agency, Pentagon ("Council Decl."); (6) David Blackborow, Assistant to the General Counsel, Department of the Army, Office of the General Counsel ("Blackborow Decl."); and (7) C.Y. Talbott, Chief, Office of Freedom of Information and Security Review, Executive Services and Communications Directorate, Washington Headquarters Services, Department of Defense ("Talbott Decl.").

(citing 5 U.S.C. § 552(a)(4)(B)), and must submit an index of all materials withheld.  Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973).

In determining whether an agency has properly withheld requested documents under a FOIA exemption, the district court conducts a de novo review of the agency's decision.  5 U.S.C. § 552(a)(4)(B).

In a FOIA case, the court may award summary judgment solely on the basis of information provided in affidavits or declarations when they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail"; (2) "demonstrate that the information withheld logically falls within the claimed exemption"; and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  See King v. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987).

## III.   ANALYSIS

Defendant claims that it is entitled to summary judgment because it conducted a reasonable and adequate search for all responsive documents.  Plaintiff opposes summary judgment on four grounds. First, he asserts that Defendant "has submitted no declaration concerning the search, if any, of the records of Ft. Pickett" from 1986.  Pl.'s Opp'n at 3.  Second, he maintains that Defendant's declarations are "entirely unspecific" in describing the searches undertaken and therefore are "legally insufficient to support defendant's motion for summary judgment."  Id. at 6.  Third, he contends that "[e]ven if defendant's declarations were sufficient -- if they adequately described the searches conducted -- certain facts undermine the declarations' assertions that adequate searches were conducted."  Id. at 14.  Fourth, he claims that "Defendant's failure to produce information responsive to [his] FOIA requests may be the result of an improper exercise of FOIA Exclusion 3[.]"  Id. at 27.

-12-

A.      **Defendant Searched the Fort Pickett Records Twice**

Plaintiff asserts that Defendant is not entitled to summary judgment because Defendant "has submitted no declaration concerning the search, if any, of the records of Fort Pickett" from 1986. Pl.'s Opp'n at 3.  Plaintiff is incorrect.

The record in the instant case includes the declaration of Wyomia G. Covert, the Administrative & Program Specialist in the Historical Records Section, Joint Force Headquarters, Virginia Army National Guard, in the Department of Information Management at Fort Pickett, Virginia.  Covert testified that she "personally searched all of the files in our Headquarters where responsive documents would likely be located.  These records would ordinarily be filed with the Headquarters of the Virginia Army or Ft. Pickett headquarters.  Neither headquarters had any responsive records nor recollection of the event inquired of by the plaintiff.  Following my search, I determined that there were no such records located at Fort Pickett as described in plaintiff's [1999] FOIA request."  Covert Decl. ¶ 9.  Covert also testified that "[p]ursuant to this litigation, our office was asked on November 15, 2004, to search our files again for any documents responsive to plaintiff's [1999] FOIA request.  I personally searched all of the files in our Headquarters where responsive documents would likely be located.  Again the records would ordinarily be filed with the Headquarters of the Virginia National Guard or the Ft. Pickett Headquarters.  Neither headquarters had any responsive records nor recollection of the event inquired of by the plaintiff."  Id. ¶ 11.

Thus, it is clear from the record in the instant case that Defendant searched the Fort Pickett records twice.

## B.   Defendant's Declarations Adequately Describe the Search for Documents Responsive to Plaintiff's FOIA Requests

Plaintiff maintains that Defendant's declarations are "entirely unspecific" in describing the searches undertaken and therefore are "legally insufficient to support defendant's motion for summary judgment."[8]  Pl.'s Opp'n at 6.

In demonstrating the adequacy of the search, the agency may rely upon "reasonably detailed, nonconclusory affidavits submitted in good faith."  Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  The agency need not "set forth with meticulous documentation the details of an epic search for the requested records," Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) ("in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA"), but it must show that the search methods was "reasonably calculated to uncover all relevant documents."  Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  See Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (FOIA requires an agency to conduct only a reasonable search for requested documents using "methods reasonably expected to produce the information requested").

Agency declarations and affidavits describing searches for FOIA-requested materials are afforded a presumption of good faith.  See SafeCard Serv., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  An adequate affidavit can be rebutted only "with evidence that the agency's search was not made in good faith."  Trans Union LLC v. Fed. Trade Comm'n, 141

---

[8]      Plaintiff does not challenge the adequacy of the declaration submitted by David Blackborow.

-14-

F.Supp.2d 62, 69 (D.D.C. 2001).  See Defenders of Wildlife v. United States Dep't of Interior, 314

F.Supp.2d 1, 8 (D.D.C. 2004).  No such evidence that the search was not made in good faith has

been submitted.

The seven declarations submitted in the instant case adequately describe Defendant's search

for documents responsive to Plaintiff's FOIA requests.  The declarations identify with reasonable

specificity the "system of records searched and the geographic location of those files."  Perry, 684

F.2d at 127.  See Weisberg v. United States Dep't of Justice, 627 F.2d 365, 370 (D.C. Cir. 1980)

(agency affidavit must denote which files were searched and reflect a systematic approach to

document location in order to enable the appellant to challenge the procedures utilized).  In addition,

they show in reasonable detail how the search was conducted, offer Plaintiff an opportunity to

challenge the adequacy of the search, and allow the Court to determine if the search was adequate

in order to grant summary judgment.  See Oglesby, 920 F.2d at 68.

Thus, it is clear from the record that the declarations submitted in the instant case adequately

describe Defendant's search for documents responsive to Plaintiff's FOIA requests.

### C.      Plaintiff Has Produced No Evidence Which Casts Doubt on the Adequacy of the Search for Documents Responsive to His FOIA Requests

Plaintiff argues that "[e]ven if defendant's declarations were sufficient -- if they adequately

described the searches conducted -- certain facts undermine the declarations' assertions that adequate

searches were conducted."  Pl.'s Opp'n at 14.  In support of this argument, Plaintiff cites to several

Army and DoD regulations which require reports to be generated whenever military assistance is

requested or given to civilian enforcement.[9]  See id. 16-22.

---

[9]         Defendant, for the purposes of the instant Motion, "does not contest plaintiff's
(continued...)

"FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control." Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 151-52 (1980) (internal citations omitted). "The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." Id. at 152. See Yeager v. Drug Enforcement Admin., 678 F.2d 315, 321 (D.C. Cir. 1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain."); Piper v. United States Dep't of Justice, 294 F.Supp.2d 16, 22 (D.D.C. 2003) ("FOIA does not impose a document retention requirement on government agencies."). Indeed, "[e]ven where the Government was obligated to retain a document and failed to do so, that failure would create neither responsibility under FOIA to reconstruct those documents nor liability for the lapse." Id. at 22 (internal quotation omitted).

Thus, contrary to Plaintiff's assertion in the instant case, "the fact that responsive documents once existed does not mean that they remain in [Defendant's] custody today or that [Defendant] had a duty under FOIA to retain the records." Wilbur v. CIA, 355 F3d 675, 678 (D.C. Cir. 2004). As discussed, supra, Defendant has met its burden on summary judgment to "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Nation Magazine v. United States Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995). Therefore, summary

---

[9](...continued)
assertion that the assistance was given or that reports were generated." Def.'s Reply at 4.

judgment in Defendant's favor is not precluded because it does not possess those documents.[10]  <u>See</u>

<u>Piper</u>, 294 F.Supp.2d at 22.

**IV.    CONCLUSION**

Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment is

**granted**.[11]

An Order will issue with this Memorandum Opinion.

August 6, 2007                                         /s/_____
                                                      Gladys Kessler
                                                      United States District Judge

---

[10]    Plaintiff argues that "defendant has made no showing that the requested information has been destroyed or otherwise conveyed out of the Army and the Department of Defense."  Pl.'s Opp'n at 25.  In support of this argument, Plaintiff cites <u>Valencia-Lucena v. United States Coast Guard, FOIA/PA</u>, 180 F.3d 32 (D.C. Cir. 1999).  Plaintiff's reliance on <u>Valencia-Lucena</u> is misplaced, however, because in that case the record failed to show that the defendant conducted an adequate search.  Moreover, the government's burden is to show that it does not possess or control the agency records sought, not to show that they were destroyed or conveyed out of the agency.

[11]    Plaintiff claims that Defendant "may" have improperly exercised FOIA Exemption 3.  Since Defendant has denied relying on Exemption 3, Plaintiff's argument is simply irrelevant.